J-S12016-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: N.B., MOTHER | : | |
| | : | |
| | : | No. 2329 EDA 2023 |

Appeal from the Order Entered August 15, 2023
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s): CP-51-DP-0002959-2015

| | | |
|---|---|---|
| IN THE INTEREST OF: J.N.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: N.B., MOTHER | : | |
| | : | |
| | : | No. 2330 EDA 2023 |

Appeal from the Decree Entered August 15, 2023
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s): CP-51-AP-0000447-2022

BEFORE: DUBOW, J., SULLIVAN, J., and BENDER, P.J.E.

MEMORANDUM BY SULLIVAN, J.: **FILED MAY 30, 2024**

N.B. ("Mother") appeals from the decree terminating her parental rights

to her daughter, J.N.B. a/k/a J.B.("Child"), born in August 2012.[1] Mother also

---

[1] By separate decree of the same date, the trial court additionally terminated the parental rights of Child's father. Father filed a notice of appeal docketed at 2331 EDA 2023, which is addressed by separate memorandum.

appeals from the order changing the Child's permanency goal from reunification to adoption. Upon review, we affirm the termination decree and dismiss the appeal from the goal change order as moot.

We glean the following relevant factual and procedural history of this case from the certified record. J.N.B.'s family has a long-standing history with the Philadelphia Department of Human Services ("DHS"). Child was first adjudicated dependent in December 2015, although she remained in Mother's custody. The court terminated supervision and discharged DHS's dependency petition in August 2016. *See* DHS Exhibit 3. The court again adjudicated Child dependent in February 2018, and placed Child in foster care. *See id*.; N.T., 6/22/23, at 16-17. Child was returned to Mother's custody in February 2019, but remained under DHS supervision until April 2021.[2] *See* DHS Exhibit 3, N.T., 6/22/23, at 39. DHS's involvement relating to Child's older siblings concerned truancy and sexual abuse; its involvement relating to Child concerned severe parental neglect, Child's exposure to drugs and sexual abuse, and Child's truancy. *See* DHS Exhibit 3; N.T., 6/22/23, at 16-17.[3]

---

[2] DHS obtained protective custody of Child and placed her in foster care for a few days in October 2020 when Mother was incarcerated. *See* Order of Protective Custody, 10/22/20.

[3] None of Child's siblings are subjects of the within proceedings or appeals.

In April 2021, the trial court again placed Child in foster care, and Child has remained there.[4]  *See* DHS Exhibits 3 through 9.  The court established a permanency goal of return to parent or guardian.  *See* DHS Exhibit 3.

In furtherance of reunification, DHS and/or the Community Umbrella Agency ("CUA") issued a single case plan ("SCP").  *See* N.T., 6/22/23, at 17-19.  Mother knew her plan's objectives focused on her mental health and intellectual capacity, housing, and visitation with Child.  *See id*.  These objectives remained consistent throughout the pendency of the dependency proceedings.  *See id*. at 19-20; DHS Exhibit 3.

Mother was initially granted visitation with Child, but the court suspended that contact because it had "grave psychological concerns over [Child's] interaction with Mother." Order, 6/23/21.  The court subsequently granted Mother supervised visitation from August 2021 to January 2022.  *See* Exhibit DHS 3.[5]  CUA case manager, Tamika Palmer ("Ms. Palmer"), later testified Mother's visitation was modified to supervised, virtual visitation from January 2022 to November 2022.  *See* N.T., 6/22/23, at 23.  Ms. Palmer testified Mother did not  consistently participate in the virtual visits, some of which were stopped early because she behaved inappropriately.  *See id*. at

---

[4] At the time of the subject hearings, Child had been placed in her current treatment foster care home for approximately two years.  *See* N.T., 6/22/23, at 26.

[5] The court, however, established a concurrent goal of adoption in March 2022. *See* DHS Exhibit 3.

23-24. Significantly, Mother's visitation was again suspended in November 2022, at the request of Child's then therapist, because the visits caused Child emotional stress and anxiety. *See id*. at 23. Subsequently, the court permitted Mother supervised visitation at Child's discretion. No such visitation occurred. *See* DHS Exhibit 3. Further, despite court permission to send Child letters and photos through her therapist, Mother failed to do so and did not inquire or seek updates about Child. *See id*. at 24-25, 41. Mother has had no contact with Child since November 2022. *See id*. at 25, 36.

In July 2022, DHS filed a petition to change Child's concurrent permanency goal from reunification to adoption, and a petition to involuntarily terminate Father's and Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). The court held two days of hearings on DHS's petitions. Child, then almost eleven years old, was represented by a separate guardian *ad litem* ("GAL") and legal counsel.[6] *See* 23 Pa.C.S.A. § 2313(a). Mother did not appear and her whereabouts were unknown; counsel represented her at the proceedings. *See* N.T., 6/22/23, at 24.

On the first day of the hearing, the Agency presented the testimony of Ms. Palmer, described above, and Child's current therapist, Alexandra

---

[6] Both the GAL and legal counsel argued in favor of termination and goal change at the conclusion of the August 15, 2023, hearing. The GAL additionally submitted a brief to this Court in support of termination of Mother's parental rights.

Ciarrocchi ("Ms. Ciarrocchi"), a trauma clinician with Children's Crisis Treatment Center, who testified since she began seeing Child in January 2023, Child has not expressed any desire to have contact with Mother. *See id*. at 46-47; 51.

On the second day of the hearing, the court interviewed Child *in camera* in the presence of the parties' counsel. Additionally, Emily Cherniack, Esquire ("Ms. Cherniack"), counsel for Child, presented a report on her discussions with Child. *See* N.T., 8/15/23, at 4-5 (unnumbered).

By decree, the trial court involuntarily terminated Mother's parental rights to Child.[7] By separate order dated and entered the same day, the court also changed Child's permanency goal from reunification to adoption.

Mother, through court-appointed counsel, filed timely notices of appeal, along with concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b), which this Court consolidated *sua sponte*. The trial court filed a responsive Rule 1925(a) opinion.

On appeal, Mother raises the following issues for our review:

1. Did the trial court err in terminating [Mother]'s parental rights under Pa.C.S.[A.] Section 2511?

2. Did the trial court err in finding that termination of parental rights best served Child's developmental, physical[,] and emotional needs under subsection 2511(b)?

---

[7] The court also terminated Father's parental rights.

3. Did the trial court err in changing Child's goal to adoption?

Mother's Brief at vii (suggested answers omitted, capitalization and spelling standardized).[8]  While not mentioned in her statement of questions, in the body of her brief, Mother argues the trial court infringed on her fundamental rights guaranteed by the Fourteenth Amendment to the United States Constitution.[9]  **See** Mother's Brief at 3-6.

Our standard of review is as follows:

> [I]n cases involving involuntary termination of parental rights[, our review] is limited to determining whether the trial court's determination is supported by competent evidence.  When applying this standard of review, an appellate court must accept the findings of fact and credibility determinations of the trial court if they are supported by evidence of record.  Where the trial court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion.  An abuse of discretion is found where there is a demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill will.  ***It matters not that an appellate court might have reached a***

---

[8] Mother's brief does not comply with Pa.R.A.P. 2119(a), which states, "[t]he argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent."  Because we can discern the general issues raised and related arguments, and we perceive no prejudice, we will not find waiver based on this deficiency.

[9] Mother waived her constitutional issues by failing to raise them in her 1925(b) Statement or statement of questions involved in her brief.  **See In re M.Z.T.M.W.**, 163 A.3d 462, 466 (Pa. Super. 2017) (reiterating issues not included in a concise statement of errors complained of on appeal and statement of questions involved are waived).  Therefore, we will not address them.

> ***different conclusion***, as it is well-established that absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand.

***In re Adoption of L.A.K.***, 265 A.3d 580, 591 (Pa. 2021) (internal citations and quotation marks omitted; emphasis added).

Pennsylvania's Adoption Act ("the Act") governs involuntary termination of parental rights proceedings. ***See*** 23 Pa.C.S.A. §§ 2101-2938. Subsection 2511(a) provides grounds for the involuntary termination of parental rights. If the trial court finds clear and convincing evidence supporting the existence of one of the grounds for termination set forth in subsection (a), the court must then consider whether termination would best serve the child under subsection (b). ***See id.*** § 2511(b). This Court need only agree with one of the grounds set forth in subsection (a) to affirm, provided subsection (b) is also satisfied. ***See In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

In the case *sub judice*, the trial court terminated Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). Mother baldly contends, "DHS has not met its burden of clear and convincing evidence[.] ***See*** Mother's Brief at 9. She further claims, DHS has not shown termination

would "best serve the needs and welfare of the child." ***Id***. at 10 (quotation marks omitted).[10]

The trial court disagreed, finding Mother was aware of, but failed to comply with, her SCP objectives. ***See*** Trial Court Opinion, 1/4/24, at 23-26. The court concluded that by establishing Mother's continuing failure to cooperate with DHS and other service providers, "DHS met its burden by clear and convincing evidence to terminate Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1),(2,),(5),(8)." ***Id***. at 26.

The evidence demonstrates the trial court did not err in terminating Mother's parental rights pursuant to Sections 2511(a)(1) and (b), which provide as follows:

> **(a) General rule.**--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> (1)  The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> * * * * *

---

[10] It would be well within the remit of this Court to find Mother waived any challenge to the trial court's termination of parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), and (8) because of her failure to develop her argument on this issue. ***See M.Z.T.M.W.***, 163 A.3d at 465-66 (explaining a claim is waived where an appellate brief fails to provide any discussion of the claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review).  However, because of the fundamental issues raised, we will, to the extent possible, discuss the merits of Mother's challenge to the termination of her parental rights.

**(b) Other considerations**.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (b).

To establish grounds for termination pursuant to Section 2511(a)(1) "[a] petitioner. . . must demonstrate by competent, clear and convincing evidence, '[t]he parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.'" *In re Adoption of C.M.*, 255 A.3d 343, 363-64 (Pa. 2021) (citation omitted) (footnote omitted). While "parental duties" are undefined in the statute,

> our courts long have interpreted [them] in relation to the needs of a child, such as love, protection, guidance and support. Parental duties are carried out through affirmative actions that develop and maintain the parent-child relationship. The roster of such positive actions undoubtedly includes communication and association. The performance of parental duties requires that a parent exert himself to take and maintain a place of importance in the child's life.

*L.A.K.*, 265 A.3d at 592 (internal citations and quotation marks omitted). Furthermore, "[f]ortitude is required, as a parent must act with 'reasonable

- 9 -

firmness' to overcome obstacles that stand in the way of preserving a parent-child relationship and may not wait for a more suitable time to perform parental responsibilities." *Id.* at 592 (citation omitted).

In assessing Section 2511(a)(1), trial courts should consider the entire history of the case and avoid applying the statutory six-month requirement mechanically. *See C.M.*, 255 A.3d at 364. However, the General Assembly's emphasis on the six months immediately preceding the filing of the termination petition indicates this time frame is the "most critical period for evaluation" of a parent's conduct. *L.A.K.*, 265 A.3d at 592.

Even where the evidence clearly shows a parent failed to perform parental duties for more than six months, the court will, in furtherance of the needs and welfare of children, examine the individual circumstances and any explanation offered by the parent to determine if that evidence clearly warrants permitting the involuntary termination of parental rights. *See L.A.K.*, 265 A.3d at 593. The totality of the circumstances includes consideration of the following:

> (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between the parent and child, if any, including any efforts made by the parent to reestablish contact with the child; and (3) the effect that termination of parental rights would have on the child pursuant to [s]ection 2511(b).

*Id*.

Here, in concluding that DHS established the statutory grounds to terminate Mother's parental rights pursuant to section 2511(a), the trial court found:

> [M]s. Palmer's testimony was credible regarding Mother and her [SCP] objectives. The [SCP] objectives were established and communicated to Mother on multiple occasions by phone and mail. Mother was made aware that she had to comply with these . . . objectives. The objectives remained consistent throughout the life of the case. This [c]ourt found that Mother did not comply with any of her [SCP] objectives.
>
> * * * * *
>
> [The record reflects] Mother did not provide an accurate address [to Ms. Palmer]. The releases that were requested of Mother were never signed. The medical records that were requested from Mother were never provided. Mother never engaged in therapy for her mental health. Mother did participate in the parenting capacity evaluation[,] but **the results indicated that Mother did not have the present ability to care for [Child]**. As to the visitation, Mother was [not] consistent with the supervised virtual visits from when they started in January 2022 until November 2022 . . . and some . . . visits were not appropriate due to Mother's explosive behavior. The visits were suspended by the [c]ourt in November 2022 after [Child]'s therapist indicated that the visits were causing [Child] emotional distress and increased anxiety.

Trial Court Opinion, 1/4/24, at 25-26 (record citations omitted, emphasis added).

As the record supports the trial court's determination of grounds for termination under section 2511(a)(1), we do not disturb that determination. Specifically, Ms. Palmer testified that Mother, despite knowing the specifics of the SCP, was never fully compliant with its objectives. **See** N.T., 6/22/23, at 17-20. As noted above, Ms. Palmer testified Mother did not engage in court-

ordered individual therapy, did not execute any related releases, failed to provide her correct address, and inconsistently attended virtual visitation and often did not behave appropriately, resulting in the visits being cut short. *See* N.T., 6/22/23, at 20-25, 40-41. Further, the court terminated the visits in November 2022 because Child's therapist stated they caused Child emotional problems. *See id*.; *see also* DHS Exhibit 3. When given the opportunity, Child did not seek any visitation with Mother. *See* DHS Exhibit 3. Finally, Mother did not seek updates about Child and last had contact with Child in November 2022. *See* N.T., 6/22/23, at 25, 36.

The evidence demonstrates Mother's settled purpose of relinquishing her parental claim to Child and refusal or failure to perform her parental duties for a period of more than six months. ***Indeed, Mother did not appear at either of the two dates of the involuntary termination proceeding without explanation***. *See* N.T., 6/22/23, at 2, 12-14; N.T., 8/15/23, at 2-3. As such, the trial court's termination pursuant to section 2511(a)(1) is supported by competent evidence in the record, and we find no abuse of discretion. *See C.M.*, 255 A.3d at 358.

Having found sufficient grounds for termination pursuant to section 2511(a)(1), we must next determine whether termination was proper under section 2511(b). Section 2511(b) affords primary consideration to the developmental, physical, and emotional needs and welfare of the child. *See*

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). Regarding the section 2511(b) best interest analysis, this Court has explained:

> While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child. The mere existence of an emotional bond does not preclude the termination of parental rights. Rather, the [Orphans'] court must examine the status of the bond to determine whether its termination would destroy an existing, necessary and beneficial relationship . . . .
>
> In addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, . . . the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011) (internal citations, quotation marks, brackets, and indentation omitted).

The evaluation of a child's respective bonds is not always an easy task. "In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008) (citation omitted). When evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, section 2511(b) does not require a formal bonding

evaluation." *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010) (internal citations omitted).

Furthermore, "[c]ommon sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." *T.S.M.*, 71 A.3d at 268. In weighing the bond considerations pursuant to section 2511(b), "courts must keep the ticking clock of childhood ever in mind." *Id*. at 269. Children "are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts fail . . . the result, all too often, is catastrophically maladjusted children." *Id*.

As our Supreme Court recently explained in *Interest of K.T.*, 296 A.3d 1085, 1113 (Pa. 2023),

> a court conducting the [s]ection 2511(b) needs and welfare analysis must consider more than proof of an adverse or detrimental impact from severance of the parental bond. We emphasize analysis of the parental bond is but one part of the overall subsection (b) analysis, which includes a determination of whether the bond is necessary and beneficial to the child, *i.e.*, whether maintaining the bond serves the child's developmental, physical, and emotional needs and welfare.

The *K.T.* Court explained that the inquiry must consider and weigh evidence including, but not limited to, the child's need for permanency and length of time in foster care, whether the child is in a pre-adoptive home and bonded with foster parents, and whether the foster home meets all the child's needs "including intangible needs of love, comfort, security, safety, and stability." *Id*. (footnote omitted).

- 14 -

In determining termination served Child's developmental, physical, and emotional needs and welfare pursuant to section 2511(b), the trial Court found Child's parental bond was with her foster mother, not Mother. It cited: Ms. Palmer's credible testimony about Child's close bond with pre-adoptive foster mother, with whom Child had lived for nearly two years, and who met all Child's daily needs. The court also cited Ms. Palmer's testimony that termination of parental rights would not detrimentally affect Child. The [c]ourt credited Ms. Ciarrocchi's testimony that foster mother attends all therapy sessions at Child's request, and Child wants to stay with foster mother and has not indicated a desire to return to Mother. Ms. Cherniack concurred that Child understands the concept of adoption and understood the differences between permanent legal custody], and adoption and wants foster mother to adopt her. *See* Trial Court Opinion, 1/4/24, at 29-30.

Although the court found that Mother and Child, had some type of bond, it found it did not outweigh all the benefits of her relationship with foster mother and moving Child toward a permanent adoptive home. The court concluded it would "cause more harm to [Child] to have the parental bond with the [foster mother] disrupted. Consequently, the termination of Mother's parental rights would be in the best interest of [C]hild pursuant to 23 Pa.C.S.A. § 2511(b)." *See* Trial Court Opinion, at 30.

Upon review, we discern no abuse of discretion. The record demonstrates Mother and Child do not share a necessary and beneficial

relationship pursuant to section 2511(b). ***See K.T.***, 296 A.3d at 1113. Indeed, the record reveals that no ***parent-child*** bond exists between Mother and Child, their contact causes Child emotional distress, Child shares a parent-child bond and beneficial relationship with her foster mother and wants to be adopted.

Hence, the record corroborates the trial court's determination that termination of Mother's parental rights best serves Child's developmental, physical, and emotional needs and welfare pursuant to Section 2511(b). As such, we discern no abuse of discretion and do not disturb it.

Given our disposition concerning termination, Mother's challenge of the goal change order is moot. ***See Interest of A.M.***, 256 A.3d 1263, 1272-73 (Pa. Super. 2021) (declaring goal change issues moot once parental rights are terminated).

Based on the foregoing, we affirm the decree involuntarily terminating Mother's parental rights and dismiss the appeal of the goal change order as moot.

Decree affirmed. Appeal from goal change order dismissed.

Judge Dubow did not participate in the consideration or decision of this case.

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary


Date: 5/30/2024